**BERGSTEIN et al. v. COE, Com'r of Patents.**

**No. 64924.**

District Court of the United States for the District of Columbia.

Dec. 18, 1939.

Riordon & Riordon, of Washington, D. C., for plaintiffs.

W. W. Cochran, of Washington, D. C., for defendant, Commissioner of Patents.

LUHRING, Justice.

This is a proceeding under Section 4915, R.S., 35 U.S.C.A. § 63, for the issuance of a patent, and involves the construction of Rule 96 of the Rules of Practice in the United States Patent Office.

The application for patent was filed by the plaintiff Samuel Bergstein on April 4, 1932. His invention has to do with a Method of Making Sealed Packages. Having provided cartons which have been sealed shut, the problem arises of closing the small pin holes which exist at the corners where the side flaps fold over the end flaps. It is the object of the invention to close these small openings and to repair as practically as possible, consistent with rapid operation, the slight breakage of surface close to these corner openings. This is accomplished by the application of a sealing medium along the edges of the adhesively secured flaps of the closed carton.

The claims in issue were duly allowed by the Patent Office in accordance with a regular notice of allowance on the 14th day of February, 1935.

The following are illustrative of the claims allowed and now in issue:

"5. A method of hermetically sealing an edge of a container adjacent overlapped adhesively secured wall portions, which consists in applying a coating of hermetically sealing medium to the carton, substantially restricted to said edge and thereafter removing any excess of said sealing medium from said edge, as the container is moved along.

"9. The method of making a sealed package with a carton of paper stock having an air-proofing coating, said carbon having lapping flaps folded at an angle to each other and adhesively secured together, whereby edges are left with crevices at the ends of the folds, comprising the application of an adhesive fluid in free condition, substantially exclusively to said edges, whereby said fluid closes said crevices, and to said folds whereby said fluid covers any breaks in said coating incident to the folding.

"25. The method of making a tightly closed package of a carton formed of paper board where the carton has crevices along the meeting edges of two of its sides and at the corners at the ends of said edges, which consists in passing the carton along a line parallel with said edges, and forcing a controlled body of sealing medium across each one of said edges as the carton passes along, whereby the sealing medium is applied substantially exclusively to said edges and corners as a resultant of the forcing action on the sealing medium and the travel of the carton."

After the allowance of the claims, the examiner, with the approval of the Assistant Commissioner of Patents, on April 15, 1935, suggested to the applicant for the purpose of interference the following claims:

"The method of initially folding and adhesively securing together foldable parts of a container whereby crevices are developed at the surface of the container and adjacent said folded parts and then applying plugging and sealing adhesive material

along the crevices incident to said folding and securing operations, and applying pressure to the container alongside of said crevices during the plugging and sealing operation.

"The method of treating containers having flexible parts folded upon one another whereby crevices are formed at the surface of the container and adjacent to said folded parts, comprising the steps of applying an adhesive crevice filler along the crevices at the lines of folding of the said folded parts, and applying pressure to the flexible parts to contract the crevices during and after application of the crevice filler."

The applicant was notified at the same time that a failure to make the suggested claims within thirty days would be taken as a disclaimer of the subject matter covered thereby.

The action of the examiner in suggesting the claims is in accord with the provisions of Rule 96 of the Rules of Practice in the United States Patent Office. That rule in so far as pertinent here reads as follows: "Whenever the claims of two or more applications differ in phraseology, but relate to substantially the same patentable subject matter, the examiner, when one of the applications is ready for allowance, shall suggest to the parties such claims as are necessary to cover the common invention in substantially the same language. The examiner shall send copies of the letter suggesting claims to the applicant and to the assignee, as well as to the attorney of record in each case. The parties to whom the claims are suggested will be required to make those claims and put the application in condition for allowance within a specified time in order that an interference may be declared. Upon the failure of any applicant to make the claim suggested within the time specified, such failure or refusal shall be taken without further action as a disclaimer of the invention covered by the claim, and the issue of the patent to the applicant whose application is in condition for allowance will not be delayed unless the time for making the claim and putting the application in condition for allowance be extended upon a proper showing. * * *"

The applicant failed to make the claims suggested within the time specified. On the 29th day of May, 1935, the Patent Office withdrew the application from issue for the purpose of applying the disclaimed subject matter, and, on the 18th day of June, 1935, notified counsel for applicant that the claims in issue "are rejected as being unpatentable over the invention disclaimed by applicant's failure to make the claims suggested in the office letter of April 15, 1935."

Responding to the action of the examiner rejecting the claims, the applicant filed a "Petition to Examiner to Suggest Claims for Interference," and therein "requested that the examiner suggest claims which clearly read on both cases which could have been involved in interference had the applicant made the counts suggested for purposes of interference in the office letter of April 15th, 1935." The examiner adhered to his action in rejecting the claims and, on November 12th, 1935, made that action final.

On appeal to the Board of Appeals it was held that the claims in issue were unpatentable to the applicant and affirmed the decision of the examiner.

The Court is indebted to Mr. R. F. Whitehead, former Solicitor for the Patent Office, for the following statement of the origin of Rule 96:

"Perhaps it would be well to set out the origin of present Rule 96 of the Patent Office Rules, which provides for the suggestion of claims to an applicant for the purpose of establishing an interference and also contains the provision that where the applicant fails to make such suggested claim, within the time fixed by the examiner, that failure shall be taken 'as a disclaimer of the invention covered by that claim unless the time be extended upon a proper showing.'

"Prior to 1898 it was the custom when two applications were found to be claiming the same patentable invention, for the examiner to set up an interference with a certain claim, or claims, as the issue. The examiner sometimes used a claim, or claims, of one or more of the applicants to form the issue, as it was called, of the interference, but more frequently drafted a claim himself, either by modifying one or more of the claims of one of the applications or by formulating an entirely new claim. When the interferences were thus declared there were numerous controversies as to what was called 'No interference in fact'; in other words, the parties contended that the two applications did not disclose the same invention and therefore the examiner had improperly declared the interference.

524

"Commissioner of Patents Duell (who was afterwards one of the judges of the Court of Appeals of the District of Columbia) instituted the practice of suggesting claims from one applicant to the other, or from each applicant to the other, so that when the applicants had made these claims, the identical claims which constituted the issue of the interference would be found in each of the applications. This practice started in 1898 and Rule 96, in its present form, at least so far as this case is concerned, will be found in the edition of the rules of July 18, 1899. This rule contained then, as it does now, the provision as to the failure or refusal to make the suggested claims within the time specified by the examiner constituting a disclaimer of the invention thereof."

It is explained here that the applicant did not make the suggested claims because it was deemed that they did not read upon the disclosure of his application.

In his "Petition to Examiner to Suggest Claims for Interference," referred to above, the applicant stated that the two claims "apparently related to a method in which a plugging and sealing adhesive material was applied to crevices incident to the folding and securing operations." He further stated that he "did not consider that his method entitled him to make these claims, and, therefore, did not do so." He conceded that "the subject matter of these claims was of course disclaimed by applicant's failure to make these suggested counts."

■ This petition was filed long after the expiration of the thirty day period fixed for the making of the suggested claims. Nothing was brought to the attention of the Patent Office within that period. There was simply a failure or neglect to make the suggested claims. In his brief on appeal the applicant stated that it is his guess that the inventor of the other application, from which the claims were suggested, proposes applying adhesive tape to the edges of a sealed carton to secure firm adhesion, and that if this is not the fact his argument will be of no further effect. Under the rules of the Patent Office, the applicant was given the opportunity to make the suggested claims and thus gain access to the disclosure of the other application. He ignored that opportunity and can not now complain as he does in his brief on appeal that "he is in the dark as to the substance of the conflicting case, and can only assume that his invention is distinctive in fact." There is no ambiguity in that part of Rule 96 providing that "upon failure of any applicant to make the claim suggested within the time specified, such failure or refusal shall be taken without further action as a disclaimer of the invention covered by the claim * * *."

■ The suggested claims were taken from the application of Albert Wesselman, No. 641,198, and now appear as claims 4 and 5 of the patent, No. 2,043,135, granted to him June 2, 1936 on a "Method for Sealing Paper Cartons."

Both Bergstein and Wesselman had the same object in view and their methods are strikingly similar. They sought to fill or seal the pin holes or breaks incident to the folding of the flaps. Wesselman accomplished this by spraying the corner with a quick drying material that functions both as an adhesive and as a plugging or sealing substance. Bergstein used a wheel 43 to apply the sealing medium. As the carton moves along it encounters this wheel, which is dipped in a sealing medium, and the wheel rubs the medium along the cracks in the fold. The carton in Wesselman as it moves along past the spray nozzles 17 is sprayed with the sealing matter.

There is nothing in the suggested claims to indicate that they referred to putting a piece of adhesive tape along the edge of the carton. The first of the claims specifies applying "a plugging and sealing adhesive material along the crevices," and the second to applying "an adhesive crevice filler along the crevices as the lines of folding."

The suggested claims clearly read on the Bergstein disclosure, and, therefore, "the subject matter of these claims was of course disclaimed by applicant's failure to make these suggested counts."

The bill is dismissed and counsel will present formal findings of fact and conclusions of law accordingly.